### CROSS COUNTRY LEASING CORPORATION, Plaintiff,

v.

### RYDER TRUCK RENTAL, INC., Defendant.

### Civ. No. 68–C–122–A.

United States District Court,
W. D. Virginia,
Abingdon Division.

Aug. 26, 1969.

HAYES, District Judge.

For opinion, see D. C., 302 F.Supp. 1274.

### FINDINGS OF FACT

After hearing the evidence, the argument of counsel and consideration of the record and briefs, the Court makes the following findings of fact:

1.

The defendant, on September 30, 1968, rented from plaintiff a Heavy Duty tractor under the terms of a written Contract as shown by plaintiff's Exhibit 1.

The written contract consists of a front and back page, a Xerox copy is hereto attached.* The front page at the time plaintiff's truck was delivered to defendant's agent at Ervin, Tennessee, was as follows:

* See exhibit.

CROSS COUNTRY RENTAL CONTRACT
LEASING Cross-Country Leasing A 1651
Corporation Please indicate num-
Route 2, Abingdon, Va. ber you are paying on
24210 your check stub or re-
RENTER Ryder Truck Rental mittance advice
Street Box 1587 This also serves as
City & State Augusta Georgia your invoice
Truck No. 77A

Ordered By Jack Jordan
Employed By Ryder Truck Rental Date Time
Vehicle to be In
Used for Hauling Beverages Out 9/30/68 6 P. M.
Trip to Augusta Georgia Time used
Reservation Date 9–30–68 Time 6 P.M.
Type Truck Requested H. D. Tractor
Rate @ $38.50 per day
@ 16¢ per mile
Vehicle to be Returned on or before Mileage in
Date 10–3–68 Mileage out 67366

---

Contract on page 1 and page 2 is agreed to by
owner and renter
RENTER RYDER TRUCK RENTALS
By Elwood F. Johnson
Cross Country Leasing Corp.
By W. O. Wright

Read terms and conditions on reverse side.
The court finds the reverse side of the contract is as
set forth in the Exhibit.

2. A carbon copy of the above contract was delivered to Elwood F. Johnson at the same time plaintiff delivered to him its H.D. Tractor at the request of the defendant.

3. On October 7, 1968, the defendant, in order to save itself the 16¢ per mile if the tractor was operated on the public highways and to avoid the wages of a truck driver, for defendant's own economic reasons, fastened the plaintiff's tractor to defendant's tow master truck and started to tow plaintiff's tractor from Augusta, Georgia to Abingdon, Virginia, a distance of 300 miles and over mountainous roads in the vicinity of Asheville, N. C., and when the outfit reached a point 18 miles north of Asheville, plaintiff's tractor became uncoupled from the towing tractor, then ran off the road, turned over and damaged the plaintiff's tractor in the sum of $6,491.71.

4. The defendant had no authority, expressed or implied, under the rental contract to tow the plaintiff's tractor.

5. The injury to the plaintiff's truck was inflicted in North Carolina and its liability therefor is governed by the laws of North Carolina.

6. When defendant deviated from its contract with plaintiff by using the truck in an unauthorized manner, it is liable for the damages

proximately arising therefrom. Towing the tractor was the immediate and sole proximate cause of its damage, and was an unauthorized use.

7. When the tractor was returned October 11, 1968, James Estep filled out the invoice by writing days used 11, mileage in 68758, mileage used 1392, 11 days at ($38.50) $423.50, 1392 (miles at 16¢ per mile) $222.72, subtotal 646.22. Took truck to Ervin, Tenn. to driver 5 hours @ 3.75 per hour, $18.75, giving total $664.97. These were proper charges to which should be added 300 miles return trip at 16¢ per mile or $48.00, making a total of $712.97.

8. Plaintiff is entitled to recover interest at 6 percent from October 11, 1968, on the $712.97 and on the damages to the tractor from October 11, 1968, making a total of $378.24.

9. The plaintiff is entitled to recover the sum of $300.00 attorney fee necessitated by defendant's failure to pay without litigation.

### CONCLUSIONS OF LAW

1. The written contract should be construed from its four corners to ascertain its meaning.

2. Although the front page in large letters states "Vehicle to be used for hauling Beverages trip to Augusta, Georgia" when construed in connection with the language on the back of the document would confine it to the usual course of business of Renter which was handling freight over the public Highways.

3. Paragraph 1 prohibits the use of the vehicle in subsections (a) through (g) and a further restriction, "Operation of the vehicle by Renter, his employee, agent or otherwise authorized person, in violation of the use and driver restrictions or Renter's warranties is expressly prohibited." Towing the tractor from Augusta, Georgia, to Abingdon, Virginia, was prohibited by the terms of the contract and was not in the usual course of Renter's business.

4. Although defendant at times towed tractors, usually when disabled, such use was not a general custom so recognized among truckers as to become an implied part of the contract.

5. The principles protecting the bailee from damages to the bailed property, except for the negligence of bailee do not apply when bailee makes an unauthorized use of the bailed property without the consent of the bailor.

6. The restrictions as to damages applies only when the damages arise from use authorized in the contract.

7. In addition to the general principles of law as set forth in No. 5 and 6, the contract between the parties expressly provides in 8(d) "Renter shall, however, be fully liable for all collision damage if the vehicle is used, operated or driven in violation of any of the provisions of the contract." Towing it on the public highways constituted a misuse and an unanticipated use of the vehicle.

8. By departing from the contract by using the vehicle in an unauthorized manner renders the defendant liable for all the damages proximately caused thereby and without regard to negligence of renter.

EXHIBIT

CROSS-COUNTRY LEASING CORP.
HOLT ROAD & FOUNDRY LOOP
Route 2
Abingdon, Va. 24210

PLEASE INDICATE NUMBER YOU
ARE PAYING ON YOUR CHECK
STUB OR REMITTANCE ADVICE

THIS ALSO SERVES AS
YOUR INVOICE

| | | |
|---|---|---|
| RENTER _RYDER TRUCK RENTAL_ | SUB | TRUCK NO. _77A_ |
| STREET _BOX 1587_ | FOR LEASE VEHICLE NO. | TRAILER NO. |
| CITY & STATE _AUGUSTA GEORGIA_ | CITY & STATE | |
| ORDERED BY _JACK JORDAN_ NO. | ODOMETER READING | |

| | DATE | TIME |
|---|---|---|
| IN | 10-11-68 | 5 P.M. |
| OUT | 9-30-68 | 6 P.M. |

EMPLOYED BY _RYDER TRUCK RENTAL_

VEHICLE TO BE USED FOR _HAULING BEVERAGES_ TRIP TO _AUGUSTA GEORGIA_

TIME USED _11 DAYS_

RESERVATION DATE _9-30-68_ TIME _6 PM_

TYPE TRUCK REQUESTED _HD TRACTOR_

| | |
|---|---|
| MILEAGE IN | 68758 |
| MILEAGE OUT | 67366 |
| MILEAGE USED | 1392 |

VEHICLE TO BE RETURNED ON OR BEFORE DATE _10-3-68_ TIME A.M. P.M. (SEE PARAGRAPH 13 ON PAGE 2)

DRIVER'S LICENSE NO. | WHERE ISSUED | EXPIRATION DATE

LOAD LIMIT TRUCK ___ LBS. LOAD LIMIT LIFT GATE ___ LBS.

RATE

| | | |
|---|---|---|
| _11_ HOURS @ ___ PER HOUR | | |
| _11_ DAYS @ _3850_ PER DAY | | 423 50 |
| ___ WEEKS @ ___ PER WEEK | | |
| _1392_ MILES @ _16¢_ PER MILE | | 222 72 |

EQUIPMENT FURNISHED WITH TRUCK

SIDE GATES · JACK · FLARE KIT
TAIL GATES · LUG WRENCH
FIRE EXT. · SPARE TIRE

GAS PURCHASED OUTSIDE TO BE REIMBURSED AT ___ ¢ PER GAL.

SPEC. EQUIP. @ ___ PER ___ PER ___

RENTER TO FURNISH LIABILITY INSURANCE (PARAGRAPH 5 ON PAGE 2 TO APPLY)
INITIAL HERE

| | |
|---|---|
| SUB TOTAL | 646 22 |

RENTER'S LIABILITY FOR DAMAGE IS FIRST
$100.00—STRAIGHT TRUCK
$250.00—TRACTOR, TRAILER, REFRIG. UNIT
(SEE PARAGRAPH 8 (o)(i) ON PAGE 2)

RENTAL DAY IS _24_ HOURS
MINIMUM CHARGE $ _10_00_

SALES TAX CITY @ ___ STATE @ ___

RENTER'S LIABILITY FOR DAMAGE WAIVER (SEE PARAGRAPH 8 (X)(II) ON PAGE 2)
INITIAL HERE

RENTER IS RESPONSIBLE FOR CONDITION OF UNIT - EXCEPTIONS LISTED:

INSURANCE

CONTRACT ON PAGE 1 AND PAGE 2 IS AGREED TO BY OWNER AND RENTER

RENTER _RYDER TRUCK RENTALS_
BY

| | |
|---|---|
| TOTAL CHARGES | 646 22 |
| DEPOSIT RECEIVED BY | 18 75 |
| | 664 97 |

REFUND RECEIVED BY

CROSS-COUNTRY LEASING CORP.
BY

BALANCE DUE CCLC

CASH | CHARGE | CHECKED IN BY

READ TERMS AND CONDITIONS ON REVERSE SIDE

CC-16A

[A 2616]

317 F.Supp.—40

CROSS-COUNTRY LEASING CORP. (OWNER). hereby rents to the firm or person executing the reverse side hereof (RENTER) the motor vehicle described herein. (VEHICLE) OWNER and RENTER for the considerations and warranties herein provided covenant and agree as follows:

1. For the purpose of inducing the OWNER to enter into this Agreement, RENTER warrants that the VEHICLE shall not be operated:

 (a) In violation of any law, ordinance, rule or regulation of any governmental agency or body or by any person who is not duly licensed, or under the age of twenty-one.

 (b) To propel or tow any other VEHICLE.

 (c) By any person other than the RENTER, his employer or any person regularly employed by such RENTER.

 (d) By a driver or RENTER who has given a fictitious name or false address.

 (e) By any person while under the influence of intoxicants or narcotics.

 (f) Recklessly as to speed or otherwise; or in any race of speed contest.

 (g) Outside the scope of the driver's employment and the usual course of business of RENTER.

Operation of the VEHICLE by RENTER, his employee, agent or any other authorized person, in violation of the use and driver restrictions or RENTER'S warranties is expressly prohibited.

2. RENTER agrees to notify OWNER of any change of driver and to arrange for OWNER to safety check any such additional driver.

3. The RENTER ACKNOWLEDGES and agrees:

 (a) That the VEHICLE is the property of the OWNER.

 (b) That he has inspected the VEHICLE in the presence of the OWNER and that it is received by RENTER in good condition mechanically and otherwise.

 (c) That no repairs, or replacement of any parts will be made without OWNER's authorization.

 (d) Not to remove the VEHICLE from the state in which delivery is made without the written consent of OWNER.

 (e) That the VEHICLE will at all times during this contract be operated under RENTER's or his employer's exclusive dominion and control, RENTER or the driver of the VEHICLE shall in no event be or be deemed the agent, servant or employee of OWNER in any manner or for any purpose whatsoever.

 (f) To pay any special license or tax required by the business of RENTER, including without limitation such licenses, taxes or tolls as are imposed against the RENTER from or arising out of the operation of the VEHICLE; and RENTER further agrees to file or assist OWNER in filing any and all returns or reports required by any agency or governmental body as a result of the use or operation of the VEHICLE.

4. The VEHICLE is covered by an automobile liability insurance policy, a copy of which is available for inspection at the main offices of the OWNER upon request by RENTER; and RENTER being an assured under said policy, agrees to comply with and be bound by all the terms, conditions, limitations and restrictions thereof, all of which are hereby incorporated by reference and made a part hereof as though fully set forth at length, including those terms, conditions, limitations and restrictions of which no specific mention is made hereunder. The liability insurance to be furnished by OWNER pursuant to this agreement shall not exceed $100,000 for each person insured, subject to the limit of $300,000 for all injuries resulting from any one accident; and a limit of $25,000 for damages to property resulting from any one accident. The insurance extended hereunder excludes coverage for loss or damage to property of or for any injuries of any nature whatsoever to RENTER, RENTER's agents, employees, guests, members of RENTER's household, or other occupants of the VEHICLE.

5. RENTER agrees to provide standard automobile liability insurance, with OWNER as a named assured, against all risk of loss or damage to persons or property. The liability insurance to be furnished by RENTER shall not be less than $100,000 for each person injured, subject to the limit of $300,000 for all injuries resulting from any one accident; and a limit of $25,000 for damages to property resulting from any one accident, RENTER further agrees to indemnify and hold OWNER harmless from any and all claims for injury to persons or damage to property and from any and all expenses incurred in the defense of any such claims. (The provisions of this Paragraph 5 shall apply only in the event RENTER by endorsement on Page 1 hereof agrees to procure and maintain the insurance.)

6. In the event RENTER is also a Lessee pursuant to an OWNER's "Truck Lease and Service Agreement" under the terms of which the Lessee is required to procure and maintain insurance, then such Lessee's insurance shall extend to and cover the VEHICLE rented hereunder. In the event there are inconsistent or conflicting terms and conditions relating to the insurance provisions between this agreement and those set forth in said "Truck Lease and Service Agreement," the insurance provisions set forth in the "Truck Lease and Service Agreement" shall control and apply to the VEHICLES rented hereunder.

7. In the event OWNER, notwithstanding any of the other applicable provisions of this agreement, shall be required by statute, ordinance or other regulation, to extend insurance coverage to the RENTER, such insurance coverage shall be limited to the statutory financial responsibility minimum and shall be excess insurance.

8. RENTER agrees to indemnify and hold OWNER harmless from and against:

 (a) Any claim or causes of action for death or injury to persons or loss or damage to property (i) in excess of the limits of liability insurance provided for herein, whether provided by OWNER pursuant to Paragraph 4, or RENTER pursuant to

Paragraph 5, and arising out of or caused by the use of the VEHICLE rented hereunder, or (ii) which OWNER shall be required to pay as a result of any statutory requirements of insurance and which OWNER would not otherwise, pursuant to the terms hereof, be required to pay.

(b) Any and all losses, damages, costs and expenses incurred by the OWNER or his insurance company because of (i) injury or damage sustained by any occupant of said VEHICLE, including without limitation RENTER, his employees, agents or representatives or (ii) loss or damage to cargo or property of RENTER, his employees, agents or representatives.

(c) All loss, damage, cost and expense resulting from RENTER's violation of any term of this agreement or breach of RENTER's warranties as expressed herein.

(d) Loss or damage to the VEHICLE during the rental period, provided, however, that (i) RENTER's liability shall be limited to $100 for a straight truck or $250 for each tractor, trailer or refrigerated unit, or (ii) RENTER by initialing the Damage Waiver Section on Page 1 hereof, agrees to pay an additional fee therefor and OWNER agrees to waive all claim against RENTER for damage by collision to the VEHICLE. RENTER shall, however, be fully liable for all collision damage if the VEHICLE is used, operated or driven in violation of any of the provisions of this contract.

(e) The value of all tires, tools and accessories lost or stolen from the VEHICLE.

(f) All cost of repossessing the VEHICLE, including but not restricted to attorney's fees and court costs incurred in connection therewith.

(g) Any loss or damage to the VEHICLE OWNER may sustain directly or because of service required to extricate and/or tow the VEHICLE due to RENTER's driving the VEHICLE off the highway, into septic tanks, or sand, or any other position from which the VEHICLE must be extricated.

(h) All damages resulting from loading the VEHICLE beyond the payload limits.

(i) All damages to property resulting from the operation of the VEHICLE off a public road.

(j) Any fines or penalties including forfeiture or seizure resulting from use of the VEHICLE during the term of this contract.

9. RENTER agrees to report any accident, loss of or damage to the VEHICLE in writing to the OWNER immediately, and in any event, within 24 hours after such accident, loss or damage.

10. RENTER agrees to pay OWNER on demand:

(a) Mileage charge computed at the rates specified on the reverse side hereof for the mileage covered by the VEHICLE during the period of this rental contract.

(b) Service and time charges computed at the rates specified on the reverse side hereof for the period of this rental contract.

(c) All cost of collection including reasonable attorney's fees incurred in connection with the collection of charges under this

contract through an attorney or collection agency whether collected by suit or otherwise.

11. Both parties hereto understand and agree that the terms and conditions of the entire rental contract are set forth on both sides of this instrument and that the same contains all agreements of the parties.

12. RENTER agrees to return the VEHICLE to OWNER at the time and place designated on the reverse side of this contract or to return the same at such place at any sooner time upon demand of OWNER.

13. In the event RENTER fails to return the VEHICLE within three days after the time specified on the reverse side or from the date of demand by OWNER, such failure shall constitute an unauthorized taking, use and operation of the VEHICLE, and the OWNER may thereafter consider such VEHICLE as stolen and may issue and circulate (i) theft notices, (ii) cause to be issued warrants for the taking into custody of RENTER, his agent or employee, and/or (iii) take any other steps which OWNER shall deem reasonable and necessary to recover the VEHICLE. RENTER does hereby release OWNER from and agrees to indemnify OWNER against all claims for damages which RENTER or any other party may sustain as a result of such action taken by OWNER. RENTER further agrees to pay OWNER, on demand, its cost and expenses incurred in recovering such VEHICLE.